UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GLORIA PINALES GARCIA, | No. CV 14-5070-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 30, 2014, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on July 15, 2014, and March 25, 2015.[1] Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 28, 2015, that addresses their

---

[1] On March 23, 2015, the Court issued a Report and Recommendation. In light of plaintiff's subsequent filing of her Consent to proceed, on March 25, 2015, the Court withdrew the Report and Recommendation.

positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on August 12, 1961. [Administrative Record ("AR") at 31, 173.] She has past relevant work experience as a dental assistant. [AR at 31, 64.]

On December 31, 2009, plaintiff protectively filed an application for a period of disability and DIB, alleging that she has been unable to work since April 1, 2008. [AR at 19, 173.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 19, 96-97.] A hearing was held on February 16, 2012, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 36-72.] A vocational expert ("VE") also testified. [AR at 63-71.] On February 24, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from April 1, 2008, the alleged date of onset, through December 31, 2010, the date last insured. [AR at 19-33.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 15.] When the Appeals Council denied plaintiff's request for review on October 16, 2013 [AR at 9-13], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

/

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citaiton and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from April 1, 2008, the alleged onset date, through December 31, 2010, her date last insured. [AR at 21.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [D]isc disease of the lumbar spine with history of lumbar fusion surgery in 2004; degenerative joint disease of the left knee, requiring surgery on October 27, 2011; hypertension; obesity; major depressive disorder; and pain disorder due to general medical condition.

4

[Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 22.] The ALJ stated that he specifically considered whether plaintiff meets or equals Listings 1.02 and 1.04. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] as follows:

> [C]an lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; she can frequently climb ramps and stairs; she can frequently reach in all directions; she can perform frequent handling and fingering; she cannot climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to hazards; she can perform simple repetitive tasks; and she can have no more than occasional contact with coworkers and the general public.

[AR at 24.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a dental assistant. [AR at 31, 64-65.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "folder" (Dictionary of Occupational Titles ("DOT") No. 686.685-030), "packer" (DOT No. 920.687-018), and "packing machine operator" (DOT No. 920.665-010). [AR at 32, 65-66.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of April 1, 2008, through December 31, 2010, the date last insured. [AR at 32.]

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) determined that plaintiff's back condition did not meet or equal Listing 1.04A; and (2) determined plaintiff's RFC. [Joint Stipulation ("JS") at 4.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

### A.   LISTING 1.04

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment of combination of impairments that meets or equals a condition outlined in the Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)). "To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To *equal* a listed impairment,[4] a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526) (emphases in original); see also 20 C.F.R. § 416.926(a).

Plaintiff contends that the ALJ erred in his consideration of whether plaintiff meets or equals Listing 1.04A. [JS at 5-12.]

/

/

---

[4] The Social Security Administration refers to this as "medical equivalence." See 20 C.F.R. §§ 404.1526, 416.926.

### 1. The Requirements of Listing 1.04

Listing 1.04 requires a finding of disability for an individual who (a) has a "[d]isorder[] of the spine" such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture," (b) that results in compromise of a nerve root or the spinal cord, and (c) which is accompanied by the additional requirements set forth under section 1.04A, 1.04B, or 1.04C. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. Section 1.04A requires "[e]vidence of nerve root *compression* characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Id. § 1.04A (emphasis added).

### 2. Plaintiff's Impairments Do Not Meet the Requirements of Listing 1.04

Plaintiff contends that she meets Listing 1.04A. [See, e.g., JS at 5-9.] To meet a listing, a claimant's impairments must "meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 207 L. Ed. 2d 967 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

Although plaintiff sets out her reasoning as to all of the requirements necessary to meet Listing 1.04A [see, e.g., JS at 6-9], the only requirement that appears to be contested by defendant is whether there is evidence in the record of nerve root compression. [See, e.g., JS at 13.] Accordingly, this is the only requirement the Court will consider herein.

In support of her argument that there is evidence of nerve root compression, plaintiff states:

> The ALJ stated that the record shows partial numbing across the top of each foot involving the little toes extending to the lower leg. This represents irritation of the fifth lumbar and sacral nerve in the lumbar spine. She had a positive stretch test showing nerve root entrapment at the intervertebral foramen in the lumbar spine. A neurological examination showed irritation of the fifth lumbar nerve on both sides of the midline extending from the lumbar spine.

[JS at 6-7 (citing AR at 26).]

Defendant disagrees:

> Plaintiff alleges that she meets this requirement [of nerve root compression] because Ian Brodie, M.D., noted that partial numbing across the top of [plaintiff's]

7

> feet represented an irritation of the fifth lumbar and first sacral nerve in the lumbar spine. Listing 1.04A requires evidence of nerve root compression and not irritation, and Plaintiff's claim fails because she has not established evidence of nerve root compression.

[JS at 13 (citing Huizar v. Astrue, 2012 WL 3631526, at *6 (C.D. Cal. Aug. 23, 2012) (holding that evidence of a disc protrusion touching a nerve root did not constitute evidence of the nerve root compression required by Listing 1.04A).]

In reply, plaintiff states that in contrast to Huizar, the record here shows more than just a mere "touching" of a nerve root -- it shows partial numbing across the top of each foot, representing irritation of the fifth lumbar and sacral nerve; it shows "a positive stretch test showing nerve root *entrapment* at the intervertebral foramen in the lumbar spine"; and it shows irritation of the fifth lumbar nerve on both sides of the midline extending from the lumbar spine. [JS at 15 (emphasis added).] She emphasizes that Dr. Brodie, the Agreed Medical Examiner in plaintiff's workers' compensation case, found that "**Stretch tests are positive in sitting and recumbency for nerve entrapment at the intervertebral foramen in the lumbar spine**." [Id. (citing to AR at 589) (internal quotation marks omitted); see also AR at 716.]

The Court agrees with defendant that symptoms that "represent *irritation* of the lumbar and sacral nerve in the lumbar spine" are not the equivalent of "a nerve root *compression*." Moreover, although plaintiff's stretch test results in both May 2009 and October 2011 were "positive" for nerve root entrapment, Dr. Brodie's ultimate diagnoses do not include either nerve root entrapment or nerve root compression. [See, e.g., AR at 591, 718 (indicating a diagnosis of "chronic strain/sprain of the lumbar spine with radiating sciatica into both lower extremities").] Indeed, despite this finding, in October 2011, Dr. Brodie also found that plaintiff was capable of light or semi-sedentary work. [AR at 718.] There is no indication, therefore, that "entrapment" is the equivalent of "compression" or, even if it is, that the positive stretch test result alone, i.e., without confirming diagnostic evaluations or radiological reports, is enough to warrant a finding of evidence of nerve root compression. Nor does plaintiff point to any treating, consulting, or non-examining source, or radiological report, that finds evidence of nerve root compression.

8

1    Accordingly, plaintiff has not demonstrated that she meets all of the specified medical
2    criteria of Listing 1.04A.

### 3.   Plaintiff's Impairments Do Not Medically Equal the Requirements of Listing 1.04

In the alternative, plaintiff argues that her impairments medically equal the requirements of Listing 1.04. [JS at 10-11.] "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ."  Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526) (emphasis in original); see also 20 C.F.R. § 416.926(a).

Plaintiff argues:

> In this case, Plaintiff has a knee condition which, in addition to her back condition, further limits her standing and walking.  The ALJ's findings support the proposition that Plaintiff has limited standing and walking ability as the result of her left knee condition.

[JS at 10-11.]  Plaintiff notes that the "ALJ's findings" relating to plaintiff's left knee condition include findings that plaintiff suffers from degenerative joint disease of the left knee requiring surgery in October 2011; that plaintiff walks with a limp and was found to have left thigh atrophy and a positive Patellar Tap Test in the left knee; that plaintiff could only perform a half-squat because of her knee; that there was a strength deficit in her left thigh muscles; that her knee had medial and lateral joint line tenderness; that there was a positive McMurray's test; and that an MRI of her left knee showed a posterior horn medial meniscal tear, and intra-meniscal degeneration in the anterior horns of the medial and lateral menisci. [JS at 11 (citing AR at 21, 27, 253, 684-88).]

Plaintiff further argues that "[t]he [ALJ's] findings with respect to the knee exacerbate and/or are a substitute for motor loss associated with muscle weakness required by Listing 1.04A." [JS at 11.]  However, as previously discussed, defendant appears to agree that plaintiff's symptoms already meet Listing 1.04A's requirement for motor loss associated with muscle weakness. [See generally JS at 12-14.] The relevant issue herein, therefore, is whether the

9

evidence demonstrates signs or symptoms at least equal in severity and duration to the *characteristics* of a relevant listed impairment -- in this case, equal in severity and duration to a nerve root compression. Plaintiff does not attempt to explain how a reduced ability to squat [AR at 590], walking with a *slight* limp [AR at 589], left knee joint tenderness [AR at 253], *slight* left thigh muscle atrophy [AR at 590], or any of the other recited findings are medically equivalent to the signs and symptoms that could be expected to result from a compressed nerve root.

Thus, while there are some objective medical findings that arguably might be minimally related to motor loss, plaintiff has failed to demonstrate medical *equivalence*, which requires a showing of "symptoms, signs, and laboratory findings '*at least equal in severity and duration*' to the characteristics of a relevant listed impairment." Tackett, 180 F.3d at 1099 (emphasis added).

Accordingly, plaintiff has failed to establish that her impairments equal Listing 1.04.

Notwithstanding the above, because the matter is being remanded for reconsideration of plaintiff's subjective complaints, plaintiff on remand may provide evidence, if available, either of nerve root compression, or of symptoms, signs and laboratory findings at least equal in severity and duration to nerve root compression as required pursuant to Listing 1.04A.

**B.    The ALJ's RFC Determination**

Plaintiff contends that the ALJ's RFC determination is incomplete because (1) the ALJ failed to properly consider plaintiff's testimony; (2) it lacks moderate limitations in concentration, persistence or pace; (3) it lacks limitations on reaching, fingering and handling in all directions; and (4) it does not include limitations resulting from plaintiff's pain disorder. [JS at 25-26.]

**1.    Plaintiff's Credibility**

Plaintiff argues that the ALJ improperly failed to take into account her subjective symptom testimony, including her allegations of pain. [JS at 20-24.] Specifically, she contends that "because the ALJ made no finding that plaintiff was malingering, the ALJ was required to 'state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion' . . . and did not do so." [JS at 19 (citing Smolen v. Chater, 80 F.3d 1273, 1284 (9th

Cir. 1996)).] Thus, plaintiff generally alleges that the ALJ failed provide clear and convincing reasons for finding her statements not fully credible. [JS at 18.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see, generally, AR at 29-30], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. at 1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (citation and internal quotation marks omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a

11

claimant's allegations of disabling pain." Id. at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, plaintiff testified that she can lift a gallon of milk, sit or stand for twenty or thirty minutes at a time, and walk a "block and back." [AR at 50-51.] Her daily routine includes self-care, driving her son to school, performing light housework, and resting in between activities. [AR at 52.] She testified that driving was difficult because of her problems with getting in and out of the car and driving for long periods of time. [Id.] She is able to grocery shop by herself as long as she does not have to bend down to reach the lower shelves. [AR at 53.] She also told the consulting psychiatrist that she can sit or stand for two to three hours in an eight-hour workday, can perform household chores, make snacks, shop, perform self-care tasks, and drive. [AR at 462.]

The ALJ found plaintiff to be "less than fully credible" [AR at 31]:

> Although the claimant's activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition. The claimant's ability to participate in such activities undermined the credibility of the claimant's allegations of disabling functional limitations. Although the claimant alleged she felt constant pain, she admitted that she could perform some light housework with breaks. Moreover, she complained that driving to see her doctor once in a while was very difficult. She alleged she felt pain when she got in and out of the car and sometimes she lost sensation in her feet. Despite these clams, she admitted she could drive her son to school everyday.
>
> The record includes statements by [the] psychiatric consultative examiner suggesting the claimant was engaging in possible malingering or misrepresentation. The consultative examiner noted the claimant had a very low score on the Credibility Scale, which suggested she was not candid during the examination. Suggestions of malingering during the psychiatric consultation diminish the credibility of the claimant's statements.
>
> . . . .
>
> Generously considering the claimant's subjective complaints [of memory problems due to the side effects of her medications], the undersigned assessed the claimant with the ability to perform simple repetitive tasks, but not follow detailed and complex instructions.

[AR at 25, 30-31 (citations omitted).] The ALJ also found that the objective medical evidence does not support the alleged severity of plaintiff's symptoms. [AR at 31.]

The ALJ relied on plaintiff's daily activities to discount her credibility. An ALJ may rely on a claimant's daily activities to support an adverse credibility determination when those activities: (1) "contradict [the claimant's] other testimony"; or (2) "meet the threshold for transferable work skills." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). As a result, a plaintiff's credibility may be discounted if she "is able to spend a substantial part of [her] . . . day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. A claimant, however, need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (an ability to engage in some physical activities is not necessarily inconsistent with a finding of disability). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112 (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). An ALJ must identify "*which* daily activities conflicted with *which* part of [c]laimant's testimony," pointing to *specific facts* in the record to support an adverse credibility finding. Burrell, 775 F.3d at 1138.

Here, the ALJ first stated that some of plaintiff's daily activities require abilities that are necessary for obtaining and maintaining employment. [AR at 25.] He completely failed, however, to show how the few daily activities plaintiff testified to doing, e.g., taking a shower, getting dressed, doing some light housework with breaks, driving her son to school daily, doing some grocery shopping, and driving to Riverside "once in a while" for her doctor's appointments were transferable to finding and maintaining employment. [AR at 24-25.] Accordingly, this was not a specific, clear and convincing reason for discounting plaintiff's testimony.

The ALJ also stated that plaintiff's daily activities were inconsistent with the presence of an incapacitating or debilitating condition, and her "ability to participate in such activities undermined" her credibility. [AR at 25.] Specifically, the ALJ cited to two facts: (1) although plaintiff alleged

"constant pain," she was able to perform some light housework with breaks; and, (2) although plaintiff complained that driving to her doctor in Riverside from her home in San Jacinto was very difficult because she felt pain getting in and out of the car and sometimes lost sensation in her feet and would have to stop and walk around before continuing the drive, she nevertheless drove her son to school daily. [Id.] Again, a claimant does not have to be completely incapacitated to be disabled. See Fair, 885 F.2d at 603; see also Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking or exercise, does not in any way detract from her credibility as to her overall disability."); Gallant, 753 F.2d at 1453-55 (fact that claimant could cook for himself and family members as well as wash dishes did not preclude a finding that claimant was disabled). Moreover, although the ALJ made an effort to identify one of plaintiff's daily activities -- driving her son to school daily -- which he believed conflicted with plaintiff's testimony of having significant problems driving from home to her doctor in Riverside once in a while, this was not a *convincing* reason to discount plaintiff's subjective complaints. In fact, plaintiff's difficulty driving "out of town" from San Jacinto to Riverside to see her doctor "once in a while" is *consistent* with plaintiff's testimony that she can sit around twenty to thirty minutes before she feels pain in her lower back and down her legs, and needs to get up and walk around so that the numbness and the "hot needles and pin feeling" will go away. [AR at 50, 55-56.] Although plaintiff did not testify how far she has to go to drop her son off at school, there is no indication that it is anywhere near as far as the drive to the doctor. [Compare AR at 52 (plaintiff's statement that a typical day includes "taking my son to school, coming back, trying to do very light housework)" with id. (plaintiff characterizes the drive to the doctor as "pretty rough" because it is "out of town").] Accordingly, this was not a specific, clear and convincing reason to discount plaintiff's subjective statements.

The ALJ also discounted plaintiff's subjective statements based on a comment by the consultative psychiatric examiner, Irwin Savodnik, M.D., Ph.D., Q.M.E., that plaintiff's "very low score on the Credibility Scale . . . suggested she was not candid during the examination." [AR at 25 (citing AR at 395).] Accounting for Dr. Savodnik's *entire* report, however, the Court does not find this to be a convincing reason to discount plaintiff's testimony, or to require less than clear and

convincing reasons to discount her credibility. As Dr. Savodnik indicated, the Credibility Scale is an "*experimental* true-false scale," and in evaluating the test results, "careful attention is given to the other tests, the patient's history, and the personality findings on Axis II," and the "interpretation of [the findings] is involved because of the necessity of integrating these results into the sum total of the clinical and testing evaluations." [AR at 395 (emphasis added).] Dr. Savodnik also administered the Personality Assessment Inventory ("PAI"), which "provides a number of validity indices . . . designed to provide an assessment of factors that could distort" test results, including "failure to complete test items properly, carelessness, reading difficulties, confusion, exaggeration, malingering, or defensiveness." [AR at 397.] Dr. Savodnik found that with respect to plaintiff's results on these validity indices, "the number of uncompleted items is within acceptable limits." [Id.] He also found "no evidence to suggest an effort [by plaintiff] to intentionally distort the profile" [id.], and "no evidence to suggest that [plaintiff] was motivated to portray herself in a more negative or pathological light than the clinical picture would warrant." [AR at 398.] Dr. Savodnik also administered the Rey 15-Item Memorization Test and the Rey Dot Counting Test, which are designed to "evaluate the veracity of claims by patients that their cognitive ability is decreased." [AR at 400.] These two tests when used "in conjunction with other tests designed to evaluate malingering have been fruitful in identifying patients who were not truly impaired cognitively, and were either exaggerating or fabricating their symptoms." [Id.] Plaintiff "passed the measures, suggesting that she probably was not attempting to malinger cognitive deficits." [AR at 401.] On the basis of all of the administered tests, Dr. Savodnik diagnosed pain disorder secondary to a general medical condition, and personality disorder not otherwise specified with borderline, obsessive-compulsive and histrionic features. [AR at 441.] Thus, despite plaintiff's one lower score on the Credibility Test, Dr. Savodnik considered all of plaintiff's test results and ultimately did not find that plaintiff was either a malingerer or exaggerating her symptoms.

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context

15

of materials or all parts of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); see also Holohan v. Massanari, 246 F.3d 1195, 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). Accordingly, the ALJ's reliance on this one test finding, taken out of context when viewing the totality of Dr. Savodnik's report, does not constitute sufficient evidence to discount plaintiff's credibility.

Finally, the ALJ stated that the objective medical evidence did not support the alleged severity of plaintiff's symptoms. [AR at 31.] While a lack of objective medical evidence supporting a plaintiff's subjective complaints is one factor that an ALJ can consider in evaluating symptom testimony, it cannot provide the only basis to reject a claimant's credibility. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Because this reason by itself cannot be the sole legally sufficient reason for discounting plaintiff's credibility, the ALJ's credibility determination rises or falls with the ALJ's other grounds for discrediting plaintiff. Thus, the Court declines to assess this issue at this time. Because, as discussed above, the Court finds that the ALJ's other reasons for discounting plaintiff's subjective complaints are not specific, clear and convincing, and plaintiff's subjective symptom allegations will be reconsidered on remand, the ALJ on remand may also need to redetermine the extent to which the objective medical evidence supports those allegations.[5]

---

[5] As noted by plaintiff, if a fifty-year old claimant is limited to simple, repetitive, sedentary work, reversal would be mandated under 20 C.F.R. part 404, subpart P, appendix 2, § 201.14. [JS (continued...)

16

1  Based on the foregoing, the ALJ did not provide specific, clear and convincing reasons for
2  discounting plaintiff's subjective symptom testimony and remand is warranted on this issue.

### 2. Moderate Limitations in Social Functioning and in Concentration, Persistence or Pace

At step three, the ALJ found that plaintiff had moderate limitations in social functioning, and in maintaining concentration, persistence or pace. [AR at 23.] Plaintiff contends that the ALJ should have mentioned these limitations in the RFC. [JS at 20.]

However, limitations identified in step three are "not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . ." Soc. Sec. Ruling ("SSR")[6] 96-8p; Rogers v. Comm'r of Soc. Sec. Admin., 490 F. App'x 15, 17-18 (9th Cir. 2012) (moderate impairments assessed in broad functional areas used at steps two and three of the sequential evaluation process did not equate to concrete work-related limitations for purposes of determining a claimant's RFC).

Moreover, in this case, the ALJ "generously considered" plaintiff's subjective complaints of memory problems due to medication side effects, and gave great weight to the limitations assessed by the State agency mental health consultants, and to Dr. Savodnik. [AR at 31.] Based on their findings, the ALJ limited plaintiff to simple repetitive tasks, and to no more than occasional contact with coworkers or the general public [AR at 25], thereby accounting for her memory problems and her moderate difficulties with social functioning and concentration. See Stubbs-

---

[5](...continued)
at 26.] Plaintiff also argues that the Administration should not mechanically apply the age regulation because on her date last insured she was 49 years and 8 months old -- just four months shy of age 50. [Id. (citing 20 C.F.R. § 404.1563).] Plaintiff alternatively argues that based on the VE's testimony, if plaintiff's testimony were credited as true, she could not perform the alternative work suggested by the VE. [JS at 27 (citing AR at 65-66).]

[6] SSRs do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008); see also Israel v. Astrue, 494 F.
2  App'x 794, 796 (9th Cir. 2012) (holding that the ALJ's RFC finding precluding plaintiff from
3  performing complex tasks properly accounted for his moderate difficulties in concentration,
4  persistence or pace.).

5  Accordingly, the ALJ properly accounted for plaintiff's moderate limitations in social
6  functioning, and in concentration, persistence or pace. There was no error.

### 3. Dr. Yee's Opinion

The non-examining medical consultant, M. Yee, M.D., reviewed plaintiff's records and opined that she was capable of performing light work with additional limitations. [AR at 379-82.] Plaintiff contends that although the ALJ gave "great weight" to the State agency physical medical consultants, he failed to consider Dr. Yee's finding that plaintiff "is <u>limited in reaching all directions, handling, fingering and feeling</u>." [JS at 20 (emphasis in original) (citing AR at 380).] A review of Dr. Yee's report, however, reveals that although Dr. Yee found plaintiff limited in reaching, handling, and fingering, and unlimited in feeling, he further described this limitation by explaining that plaintiff was still capable of "*[f]requent* gross and fine manipulation and reaching in all directions." [AR at 380 (emphasis added).]

Accordingly, the ALJ properly considered this opinion of Dr. Yee and incorporated it into plaintiff's RFC determination. There was no error.

### 4. Plaintiff's Pain Disorder

Plaintiff also contends that although the ALJ found that plaintiff suffers from a pain disorder based on Dr. Savodnik's diagnosis [AR at 21, 441], the ALJ's failure to include the pain disorder, or limitations resulting from that disorder in the RFC, means that the RFC is incomplete. [JS at 26.]

Because the matter is being remanded for reconsideration of plaintiff's subjective complaints, including her allegations of pain, the ALJ on remand should also determine whether the RFC should contain any limitations relating to plaintiff's pain disorder.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

Here, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, on remand, plaintiff may provide evidence, if available, either of nerve root compression, or of symptoms, signs and laboratory findings at least equal in severity and duration to nerve root compression as required pursuant to Listing 1.04A. Next, because the ALJ failed to provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons for discounting or rejecting any testimony. Further, the ALJ shall reconsider all of plaintiff's limitations in making his RFC determination, including any limitations as a result of the severe impairment of pain disorder. Thereafter, with the assistance of a VE, if warranted, the ALJ shall determine whether plaintiff is

capable of performing any other work existing in significant numbers in the regional and national economies.[7]

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 26, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.